Cynthia S. LITTLEJOHN

v.

BIC CORPORATION; BIC Societe, S.A.; John Doe(s), Component Manufacturer(s); John Doe(s), Distributor(s) and/or Wholesaler(s); John Doe, Retailer; Levi Strauss & Co.; and John Doe(s), Clothing Manufacturer(s), Distributor(s), Wholesaler(s), and/or Retailer(s); Philadelphia Newspaper, Inc., Intervenor.

**Appeal of BIC CORPORATION.**

No. 87–1666.

United States Court of Appeals, Third Circuit.

Argued April 15, 1988.

Decided July 6, 1988.

Rehearing and Panel Rehearing Denied Aug. 1, 1988.

Michael B. Oropollo (argued), Hoagland, Longo, Oropollo & Moran, New Brunswick, N.J., David M. Given, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for appellant.

Samuel E. Klein, Frank L. Corrado, Jr. (argued), Kohn, Svett, Klein & Graf, P.C., Philadelphia, Pa., for intervenor.

Robert C. Heim (argued), Debra L. Subar, Dechert Price & Rhoads, Philadelphia, Pa., for Mel D. Kardos, Esquire.

Before HUTCHINSON, SCIRICA, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

### I.

This appeal requires us to consider the application of the common law right of access to judicial records where materials which were initially discovered under the aegis of a protective order requiring confidentiality are later admitted into evidence at an open civil trial. We are presented with two disputes over access to trial transcripts and exhibits that arose after the final settlement of a products liability suit in the United States District Court for the Eastern District of Pennsylvania.

In the primary dispute, Philadelphia News, Inc. (PNI) intervened in the district court to secure access to certain trial exhibits that had been admitted into evidence.[1] Appellant BIC Corporation (BIC), the defendant in the original personal injury action, sought to prevent PNI's access to these exhibits because they were confidential corporate documents, the disclosure of which was assertedly prohibited by the terms of a protective order (PO). In a

---

1. PNI is the publisher of the Philadelphia Inquirer.

parallel dispute, BIC petitioned for an order of contempt against the original plaintiff's attorney, appellee Mel D. Kardos, contending that he had violated the protective order by refusing to return confidential BIC documents pursuant to its provisions. BIC also sought to enlarge the record through further discovery.

The district court granted PNI access to the judicial record, including access to three contested documents, refused to hold Kardos in contempt, and denied BIC's petition to enlarge the record. BIC's appeal implicates both the substantive and temporal boundaries of the common law right of public access. We affirm in part, reverse in part, and remand the case for further proceedings consistent with this opinion.

## II.

BIC's attempts to retain control over the disclosure of its corporate documents are an outgrowth of a products liability action brought against it by plaintiff Cynthia Littlejohn. Littlejohn alleged that she had been seriously injured by a defectively designed BIC disposable lighter. After engaging in not uncommon disagreements over the scope of discovery, the parties stipulated to, and the district court entered, an "umbrella" protective order that was designed to protect BIC's "trade secrets and other confidential information" from public disclosure. See Fed.R.Civ.P. 26(c).

The PO restricted the distribution of any information or documents that BIC designated "confidential": [2]

> Counsel for any party other than the defendant shall use all product and information produced and disclosed by the defendant solely for the purposes of preparing for trial of this action. Under no circumstances shall material covered by

this Protective Order be disclosed to anyone other than counsel in this action and experts retained by them. At the conclusion of the proceedings in this action, all documents and information subject to this Order, including any copies or extracts or summaries thereof, or documents containing information taken therefrom, shall be returned to counsel for the defendant.

Confidential materials obtained under the PO were to be maintained under seal by the court clerk and were to be made available only to the court and to counsel in the proceedings absent further court order. Violations of the PO were punishable as a contempt of court.

The district court bifurcated the trial of Littlejohn's action into liability and damages stages. Littlejohn's exhibits in the liability trial included confidential corporate documents that BIC had released under the PO. In particular, Littlejohn's expert witnesses testified that they had read and relied on two confidential internal BIC documents in formulating their opinions: a 1983 lighter audit (P-38) and intercompany memoranda detailing consumer complaints (P-39). [3] At the close of Littlejohn's case, the district court appeared to admit all of her exhibits into evidence. BIC failed to object to the admission of the now-contested exhibits.

The jury found BIC liable for the plaintiff's injuries. BIC then settled the case before the damages trial. The court rejected BIC's attempt to have the record sealed, and the settled action was dismissed shortly thereafter under Rule 23(b) of the Local Rules of Civil Procedure.

The disputes over BIC's confidential documents began after the final settlement of the underlying Littlejohn suit. The Philadelphia Inquirer, researching a story on

---

2. The range of information subject to the PO was to "include without limitation, all confidential, proprietary or trade secret information supplied by the defendant in response to the plaintiff's demands or requests." The stipulation and order did not provide plaintiff a means of challenging BIC's designations. Documents which BIC considers to be subject to the provisions of the protective order will be termed "confidential" herein.

3. The parties essentially agree that the district court misidentified one of the documents subject to its order as exhibit P-36 rather than P-39. Our discussion will assume the proper denomination. The record contains no specific reference to one trial exhibit at issue here, the 1981 lighter audit (P-37).

BIC lighter litigation, discovered that the original exhibits and deposition transcripts introduced at trial had been returned to defense counsel after the settlement, in accordance with the court's administrative practice and in conformance with the PO. PNI filed a motion for intervention in the *Littlejohn* action and sought access to the trial record after BIC refused to make available any evidence designated confidential under the PO.[4]

The parties' attorneys were also skirmishing over the scope of the PO. Relying on the PO, BIC sought the return of copies of documentary evidence and deposition testimony still in the hands of plaintiff's attorney, Kardos. Kardos resisted, contending that he was entitled to retain one copy of each trial exhibit and deposition transcript admitted into evidence because they were part of the judicial record and, as such, no longer subject to the PO. BIC's first petition for contempt against Kardos, filed in February 1987, was denied without prejudice. In August 1987, BIC renewed its petition for contempt, seeking

enforcement of the PO and sanctions.[5] Thereafter, Kardos submitted the disputed papers under seal to the district court.

The court held a hearing on the contempt and PNI matters in September 1987. Following the hearing, the court permitted PNI to intervene and granted it access to the judicial record, which was held to include depositions and exhibits that had been admitted into evidence. The court also denied the contempt petition. In a supplementary order, the court found that the three disputed documents had been admitted into evidence and were therefore part of the public record. BIC's motion for reconsideration and its request to enlarge the record were denied a month later and this appeal followed.[6] We will discuss the PNI and Kardos disputes *seriatim*.

### III.

PNI's motions for intervention[7] and access were based, in part, on the public's common law right of access to judicial proceedings and records.[8] The existence of

---

4. This was PNI's second motion for access to the evidentiary materials. The first had been denied without prejudice when BIC offered to make certain trial documents available to PNI.

5. Although BIC filed a contempt petition against Kardos and subsequently appealed the district court's denial of the petition, the district court docket was never amended to reflect that Kardos had become a party to the proceeding and later an appellee on this appeal.

6. The district court thus disposed of the claims before it in three related orders. The access and contempt motions were resolved by an order on September 25, 1987. A supplemental order was issued that same day further defining the scope of the judicial record to which it accorded PNI access. Finally, the court denied BIC's motion for reconsideration and its request to enlarge the record on October 21, 1987. We have jurisdiction over the district court's final orders. 28 U.S.C. § 1291 (1982).

7. BIC did not seriously contest the propriety of PNI's motion for intervention in the district court and it has not raised the issue on appeal. Rule 24 of the Fed.R.Civ.P. requires a "timely" motion for intervention "in an action." Further, "[i]ntervention is ancillary and subordinate to a main cause and whenever an action is terminated, for whatever reason, there no longer remains an action in which there can be an intervention." *Black v. Central Motors Lines,*

*Inc.,* 500 F.2d 407, 408 (4th Cir.1974); *see also Fuller v. Volk,* 351 F.2d 323, 328 (3d Cir.1965). Third parties seeking access to the judicial record after the termination of an action may therefore be required to proceed by complaint or order to show cause. *But see Bank of America Nat. Trust v. Hotel Rittenhouse,* 800 F.2d 339, 341–42 n. 2 (3d Cir.1986) (court presumes intervention appropriate method for seeking access to record even though underlying case had been settled). PNI may thus have improperly attempted to intervene in Littlejohn's personal injury suit long after the action's settlement and dismissal. In the absence of a challenge by BIC, however, we will not review the district court's intervention order. *Cf. Fuller,* 351 F.2d at 323–24 (court may treat pleading of intervenor as a separate action); *Martindell v. International Tel. & Tel. Corp.,* 594 F.2d 291, 294–95 (2d Cir.1979) (court refuses to dispose of access issue on failure to follow appropriate procedure where no objection raised below).

8. PNI asserts that it has a right of access to the contested documents under both common law and first amendment access doctrines. We can dispose of most of the parties' contentions without reaching the constitutional issue and our references to PNI's first amendment access rights will therefore be deferred. *Cf. Lowe v. SEC,* 472 U.S. 181, 190, 105 S.Ct. 2557, 2563, 86 L.Ed.2d 130 (1985) (quoting *Escambia County, Florida v. McMillan,* 466 U.S. 48, 51, 104 S.Ct. 1577, 1578, 80 L.Ed.2d 36 (1984)).

such a right "is beyond dispute." *Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059, 1066 (3d Cir.1984); *see also Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978). Access means more than the ability to attend open court proceedings; it also encompasses the right of the public to inspect and to copy judicial records. *United States v. Criden,* 648 F.2d 814, 819 (3d Cir.1981) (*Criden I*). The right, which antedates the Constitution, *id.* at 819, is based upon both "historical experience and societal utility," *United States v. Smith,* 776 F.2d 1104, 1114 (3d Cir.1985) (*Smith I*). The public's exercise of its common law access right in civil cases promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court. *See* 6 J. Wigmore, *Evidence* § 1834 (J. Chadbourne rev. 1976). As with other branches of government, the bright light cast upon the judicial process by public observation diminishes possibilities for injustice, incompetence, perjury, and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness. *See, e.g., Bank of America Nat. Trust v. Hotel Rittenhouse,* 800 F.2d 339, 345 (3d Cir.1986) (*Bank of America*).

Although our courts recognize a general common law right to inspect and to copy judicial records and documents, the right is not absolute. *Nixon,* 435 U.S. at 598, 98 S.Ct. at 1312. "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Id.* The common law thus merely establishes a presumption of public access to court proceedings and court records. *Id.* at 602, 98 S.Ct. at 1314.

In resolving claims of access to trial evidence, "the strong common law presumption of access must be balanced against the factors militating against access." *Bank of America,* 800 F.2d at 344. Despite the presumption, courts may deny access to judicial records, for example, where they are sources of business information that might harm a litigant's competitive standing. *Nixon,* 435 U.S. at 598, 98 S.Ct. at 1312.

BIC's challenges to the district court orders at issue here naturally circumscribe the scope of our discussion of the common law right. BIC essentially attempts to avoid the application of the common law access doctrine by arguing that (1) the three disputed documents were not admitted into evidence; (2) the confidential documents were protected from disclosure by the protective order, even when admitted to evidence; and (3) any public access right evaporated when the court, pursuant to administrative practice, returned the exhibits to counsel.[9]

### A. Evidence in the Record

This court has definitively held that "there is a strong presumption that material introduced into evidence at trial should be made" available for public access. *Criden I,* 648 F.2d at 823; *see also United States v. Mitchell,* 551 F.2d 1252, 1260–61 (D.C.Cir.1976); *rev'd on other grounds sub nom. Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). BIC attempts to avoid the force of this presumption by arguing that the district court erred in finding that the 1981 lighter audit (P–37), the 1983 lighter audit (P–38), and the intercompany memoranda (P–39) were admitted into evidence. The district court's factual finding will not be overturned on appeal

**9.** BIC initially also challenged PNI's right of access to deposition testimony that had been read into the record. At oral argument, BIC conceded that PNI had a right of access to this material. *See, e.g., Zenith Radio Corp. v. Matsushita Electric Industrial Co.,* 529 F.Supp. 866, 897–98 (E.D.Pa.1981) (even where document originally filed under seal, portions read into record in open court enter the public domain).

BIC additionally contends that the district court abused its discretion in balancing the interests favoring disclosure with those favoring confidentiality. We do not reach this argument in disposing of PNI's access claims, although BIC's concerns will be relevant to our consideration of its petition for contempt against Kardos. *See infra* section IV.

unless it is clearly erroneous.[10] *Leeper v. United States,* 756 F.2d 300, 307 (3d Cir. 1985).

■ At the close of the plaintiff's case the following colloquy occurred between the plaintiff's counsel, Kardos, the district court, and BIC's trial counsel, Foster:

> MR. KARDOS: ... and we would close our case and *ask that all our exhibits be admitted into evidence* and if Your Honor wants to sent the exhibits out with the jury, that's up to you but I don't believe they're necessary other than maybe one or two photographs of Cynthia Littlejohn....
>
> THE COURT: I see.
>
> MR. KARDOS: Otherwise, I don't think the exhibits need to go out. They've seen it all.
>
> THE COURT: I expect counsel to get those pictures together at the end of the case so we can send them out to the jury.
>
> MR. KARDOS: *All the exhibits that were referred to being received into evidence at this time—*
>
> MR. FOSTER: Your Honor, *I object only to the shoes and the trousers* because I believe they were not identified.... [discussion of shoes and trousers]....
>
> THE COURT: I'll admit them as being part of the record. I understand from what counsel said they're not going out to the jury.

BIC argues that this exchange proves only that the shoes and trousers were admitted into evidence. The clear import of the record, however, is that the plaintiff moved to have those of her exhibits "referred to" admitted into evidence, that BIC's counsel failed to object to the admission of the documentary exhibits, and that the judge then acquiesced to the plaintiff's request.[11]

BIC then contends that the plaintiff's reference to the admission of "all of our exhibits" did not include the contested documents because they were not used at trial. This argument fails with respect to two out of three of the exhibits listed in the district court's supplementary order. Exhibits P–38 and P–39 were admitted into evidence, based upon the pretrial identification of the proposed exhibits and the specific references to portions of those exhibits found in the trial record.[12] The court's finding of fact with respect to exhibits P–38 and P–39 must be affirmed. On the other hand, exhibit P–37 was not specifically referred to during the trial.[13] Under these circumstances, we hold it was error to find that exhibit P–37 was admitted into

---

**10.** Because we rest our conclusions upon a common law analysis we do not reach BIC's contention that this finding of fact must be given plenary review when it arises in the context of the first amendment. *See, e.g., United States v. Smith,* 787 F.2d 111, 113 n. 1 (3d Cir.1986) (*Smith II*).

**11.** It may be that BIC's counsel failed to raise valid objections to the admission of some of Littlejohn's exhibits. However, the right of public access is not determined by whether evidence is properly admitted. *Criden I,* 648 F.2d at 828.

**12.** Dr. Geremiah, an expert for the plaintiff, stated that he had used and relied upon exhibits P–38 and P–39. Specific portions of these documents were also briefly discussed in open court.

BIC argues that only those portions of the documents specifically referred to were admitted into evidence. We disagree. BIC might have objected to the admission of undiscussed portions of the plaintiff's exhibits at trial, but it failed to do so. *Cf., Matter of Continental Illi-*

*nois Securities Litigation,* 732 F.2d 1302, 1312–13 (7th Cir.1984) (fact that entire report not read aloud is not determinative, references and scattered quotes sufficient to support public access).

**13.** PNI asserts that certain witnesses implicitly referred to exhibit P–37 in their general discussion of BIC's internal audit summaries. The record, however, is devoid of any mention of P–37 by its exhibit number, or even by its specific content. General references to categories of documents were simply insufficient to identify exhibit P–37 as a document admitted into evidence. Nor were the references sufficient to identify P–37 as a part of the public record absent its admission into evidence. *Compare United States v. Martin,* 746 F.2d 964, 968–69 (3d Cir.1984) (transcripts distributed to jury may be subject to right of access even where not formally admitted into evidence); and *Zenith Radio Corp.,* 529 F.Supp. at 900 (documents referred to in the course of a hearing may become a part of the public record even where not admitted into evidence).

evidence and this portion of the court's order will be reversed.[14]

## B. The Effect of the Protective Order

BIC contends that PNI may not gain access to the confidential documents admitted into evidence because BIC relied upon the promise of confidentiality found in the PO in initially releasing the documents to the plaintiff. BIC argues that the district court erred as a matter of law in permitting PNI to gain access to these documents because the court failed to consider the extent of BIC's reliance on the PO and because the court did not require PNI to show a compelling need. *See, e.g., Martindell v. International Tel. & Tel. Corp.,* 594 F.2d 291, 296 (2d Cir.1979). Implicit in BIC's argument is the assumption that the PO properly may be read to govern the treatment of confidential BIC documents that were admitted into evidence. BIC's contention fails, however, even accepting this debatable assumption *arguendo.*[15]

The court properly found BIC waived whatever rights to confidentiality that might have been created by the PO. In her pre-trial memorandum, the plaintiff signaled her intention to use some confidential documents as trial exhibits. BIC failed to raise the issue of confidentiality.[16] BIC also failed to assert its interest at trial when the plaintiff referred to and discussed portions of the confidential exhibits with her experts. Finally, BIC did not object when the plaintiff moved to have the disputed exhibits admitted into evidence, although after the settlement, BIC did move to seal the record "for the reasons that we stated in our motion for protective order." The court refused.

It is well established that the release of information in open court "is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its future use." *National Polymer Products v. Borg–Warner Corp.,* 641 F.2d 418, 421 (6th Cir.1981). The references to the confidential documents made in open court may have constituted a sufficient publication. *See Matter of Continental Illinois Securities Litigation,* 732 F.2d at 1312–13 (failure to read aloud entire report is not determinative, references and scattered quotes sufficient to support public access). But, in any event, we hold that BIC's failure to object to the admission into evidence of the documents, absent a sealing of the record, constituted a waiver of whatever confidentiality interests might have been preserved under the PO.[17] *Cf. Bank of*

---

**14.** We note that the first amendment access right analysis offered by PNI would reach the same result. Although our definition of the judicial record subject to access under the first amendment in civil cases is still developing, *see, e.g., Publicker Industries,* 733 F.2d at 1074, the first amendment does not require us to hold that a document never specifically referred to at trial or admitted into evidence became a part of the public record subject to presumptive public access.

**15.** The assumption may be both factually and legally flawed. The district court did not believe that the PO, by its terms, explicitly covered the trial of the action. Nor does the behavior of the parties necessarily support BIC's reading. *See* JA 869–70 (BIC sought to seal record after settlement). The interpretation thrust upon the PO by BIC is also legally questionable. The PO agreed to by the parties permitted BIC to unilaterally designate documents as confidential "without limitation" as to subject matter. *Compare Zenith Radio Corp.,* 529 F.Supp. at 893. The parties stipulated to the PO and the judge apparently signed the order without an independent determination of "good cause" as required

by Fed.R.Civ.P. 26(c). BIC would have this court hold that a stipulated protective order gave BIC the unilateral power to designate which of its documents would become a part of the public record, even when admitted into evidence at trial, absent a showing of compelling need by some member of the public. In *Bank of America,* we recently confronted and rejected a similar contention. 800 F.2d at 345 (settlement agreement filed with court under seal subject to disclosure because parties' private confidentiality agreement could not bar access to what had become a judicial record); *see also Wilson v. American Motors Corp.,* 759 F.2d 1568, 1571 (11th Cir.1985); *but see Tavoulareas v. Washington Post Co.,* 111 F.R.D. 653, 659 (D.D.C. 1986) (court should consider party's reliance on protective order even where order originally entered without showing of good cause).

**16.** BIC objected to the use of some confidential documents, but only on relevancy grounds.

**17.** By the PO's terms, the documents were to be kept confidential "absent further court order." The admission of the plaintiff's trial exhibits

*America,* 800 F.2d at 345 (filed settlement became judicial record subject to public access); *Zenith Radio Corp.,* 529 F.Supp. at 897–98.

### C. The Effect of the Clerk's Return of Documents to Counsel

■ Our determination that the documents admitted into evidence had become judicial records, despite the PO, does not resolve PNI's motion for access. A novel and unique question arises because PNI first filed its motion after the underlying litigation had been finally settled, the case closed, and the disputed documents returned to the defendant BIC.[18]

The district court held that "[t]he fact that the exhibits and depositions were withdrawn by counsel after the trial and settlement does not destroy their character as public records...." In the alternative, the court found that the documents were restored to the public record when they were submitted under seal for the adjudication of the ancillary contempt petition against Kardos. Our review of the district court's resolution of this question of law is plenary.[19] *Smith II,* 787 F.2d at 113.

BIC argues that the exhibits admitted into evidence lost their status as judicial records when they were returned to their owner after the case had been finally closed.[20] This change in custody does not in and of itself determine the content of the judicial record. Under Rule 10 of the Federal Rules of Appellate Procedure, for example, trial exhibits are a part of the

record on appeal and "items that were before the district court and then withdrawn by counsel are still considered to be a part of the record on appeal, which may make it necessary to replace such items for transmission to the court of appeals." 16 C. Wright, A. Miller, E. Cooper, E. Gressman, Federal Practice and Procedure § 3956 at 386 (1977); *see also,* Fed.R.App.P. 11(a); 28 U.S.C. § 457 (1982) (records of district court should be retained until obsolete or no longer necessary or useful).

The instant case, however, presents more than a simple change of custody. The *Littlejohn* litigation had been completely closed: The parties had settled, the Clerk had returned the exhibits to their owner; and the court had dismissed the action with prejudice on October 6, 1986, under Local Rule 23(b). There was no appeal. Almost five months later, PNI, a non-party to the private litigation, first filed motions for intervention and access to the trial record and exhibits. Can we say that at this point in time the disputed exhibits still maintained their status as judicial records?

The contours in the right of access to judicial records still remain to be drawn; no case directly on point has been cited or discovered. The cases do suggest that the access right has been premised upon "historical experience and social utility." *Smith I,* 776 F.2d at 1114. The content of the judicial record thus must be responsive to these concerns.

---

into the trial record absent a seal constituted such an order. Given this order, BIC could no longer have reasonably relied on the confidentiality accorded under the PO. *Compare Bank of America,* 800 F.2d at 348 (Garth, J., dissenting) (where evidence entered into public record without reliance on secrecy, interests of parties must be weighed in light of presumption of openness); and *Publicker,* 733 F.2d at 1074 (*enforceable* confidentiality agreement may alter access determination).

18. The documents had been initially returned by the clerk to plaintiff's counsel who had offered them into evidence. He then returned the originals to BIC's counsel, keeping a copy for himself.

19. The dissent frames this issue as a simple access determination subject to the discretion of

the district court. We believe, however, that the facts require us to identify the *content* of the judicial record over which the district court may exercise discretion in permitting or denying access. The definition of the judicial record is a question of law. *See, e.g., Mitchell,* 551 F.2d at 1259.

20. In support of its contention, BIC relies upon dicta in *Zenith Radio Corp.* where Judge Becker, then a district judge, suggested that some "materials are public records only so long as they remain in the custody of the court.... We have serious doubts that a member of the public could acquire access under the common law rule to materials already restored to their owner." 529 F.Supp. at 899 n. 63.

Historically, the judicial system has recognized administratively that the content of the judicial record has temporal limits in addition to its substantive ones. Under Local Rule 39, the Clerk of the District Court has custody over "[a]ll exhibits received into evidence." Local Rules, United States District Court for the Eastern District of Pennsylvania (1986) ("Local Rules"). These exhibits, however, are considered only "auxiliary case records" and they are to

> be taken from the Clerk's custody by the party by whom they were produced or offered within sixty (60) days after the dismissal of the case by the parties or under Rule 23 or the entry of final judgment by this court, or, in the event of an appeal, within ninety (90) days after the receipt and filing of a mandate or other process or certificate showing the disposition of the case by the appellate court, otherwise such exhibits shall be deemed abandoned and shall be destroyed or otherwise disposed of by the Clerk.

*Id.* at 39(e). A federal statute authorizes the district court's administrative regulation of its records. *See* 28 U.S.C. § 457 (obsolete court papers may be disposed of with approval of court).

At the time that PNI first sought access to the judicial record, the underlying case had long been settled, no appeal was pending, and the contested exhibits had been returned to the counsel.[21] If the exhibits had not been so returned, they would already have been destroyed by the district court clerk.[22] Historical experience thus suggests that the exhibits were no longer a part of the judicial record subject to presumptive public access. This conclusion is buttressed by an examination of the social utility of first amendment and common law access rights.

█ Public access serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness. *See, e.g., Publicker,* 733 F.2d at 1069–70. These purposes were served in this case during the trial period and while the case was pending in court. The public and the press had the opportunity then to observe the judicial process and to copy and inspect the testimony and exhibits that comprised the judicial record. We are not persuaded that these purposes are served after liability has been established by trial, the case thereafter settled by the parties and finally closed by order of the trial court with prejudice. No appeal was taken and the only matter before the court is a collateral contempt proceeding against counsel for one of the parties because of his failure to return copies of the disputed exhibits, allegedly in violation of the PO.

Finally, the conflicting needs of the parties, the intervenors, and the court require that the content of the judicial record have reasonable temporal limits. In this era of "the paper chase," hundreds of thousands of exhibits may be subpoenaed and entered into evidence in bulk in a single case.[23] *See, e.g., Zenith Radio Corp.,* 529 F.Supp. at 873–74 (plaintiff's pretrial statement cross-references 250,000 documents); *United States v. American Tel. & Tel. Co.,*

---

**21.** The products liability suit was dismissed on October 6, 1986. PNI made its first motion for access to the judicial record on March 12, 1987. It renewed its motion on July 29, 1987.

**22.** We note that there is an important inconsistency in the local rules governing these documents. Under Local Rule 23, an order dismissing a settled action may be vacated, modified, or stricken from the record within ninety days of its entry. Yet, Local Rule 39 permits the court clerk to destroy exhibits submitted in settled cases within sixty days of the dismissal of the action. We assume that the exhibits could not properly be destroyed before the termination of the ninety-day period. In any

event, PNI sought access here well after the expiration of ninety days.

**23.** The quantity of court exhibits is not the only factor. Additional problems are presented where an animate object, such as a member of an endangered species, is submitted into evidence. *Cf.* 16 U.S.C. §§ 1538, 1540 (prohibited acts involving endangered species subject violator to civil or criminal penalties). In such circumstances, a continuing duty to retain trial exhibits is untenable because it would require the Clerk or the owner to maintain the endangered creature for the remainder of its life.

552 F.Supp. 131, 140 (D.D.C.1982) (parties present tens of thousands of documents at trial). Must a court be forever burdened with the responsibility of maintaining, supervising the possession of, or adjudicating access rights to, such documentary exhibits? We believe not. This is an unreasonable burden to inflict upon courts, particularly at a time when litigation continues to grow more complex and voluminous.

We therefore hold that, absent allegations of fraud or other extraordinary circumstances, trial exhibits that were restored to their owner after a case has been completely terminated and which were properly subject to destruction by the clerk of court are no longer judicial records within the "supervisory power" of the district court. *Cf. Nixon*, 435 U.S. at 598, 98 S.Ct. at 1312. Neither the first amendment nor the common law right of public access empowers the district court to require that litigants return such exhibits to the court for the purposes of copy and inspection by third parties. The trial court erred insofar as it granted PNI access to exhibits P–38 and P–39 because they were no longer a part of the judicial record. We emphasize that our reversal of this portion of the court's opinion leaves untouched PNI's right of access to items that properly remained part of the judicial record, such as the deposition testimony read into evidence at trial or exhibits or portions thereof transcribed and made part of the official transcript.[24]

## IV

We now turn to the remaining dispute raised in this appeal: The petition to hold Kardos, plaintiff's attorney, in contempt for violation of the PO. BIC based its petition for contempt on Kardos' failure to return confidential documents and depo-

sition testimony as required by the provisions of the PO. BIC also belatedly contended during argument before the district court that circumstantial evidence suggested that Kardos had distributed confidential documents in violation of the PO. Kardos argued in opposition that he was not bound to return materials that were part of the judicial record because they were no longer "subject to" the PO. Further, he asserted that there was insufficient evidence to support BIC's contention that he had released confidential documents to PNI. The court denied the petition for contempt.[25] BIC then filed a petition for reconsideration and sought to enlarge the record by conducting discovery to determine whether Kardos had released confidential documents to PNI. The court rejected this petition in its entirety. We review the court's denial of the contempt petition and its refusal to enlarge the record.

On appeal, the denial of a civil contempt citation is reviewed under the abuse of discretion standard. *Delaware Valley Citizens' Council v. Comm. of Pennsylvania*, 678 F.2d 470, 478 (3d Cir.), *cert. denied*, 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982); *Washington–Baltimore Newspaper v. Washington Post*, 626 F.2d 1029, 1031 (D.C.Cir.1980). We will reverse only when the denial is based on an error of law or a clearly erroneous finding of fact. *See, e.g., Mac Corporation of America v. Williams Patent Crusher & Pulverizer Co.*, 767 F.2d 882, 885 (Fed.Cir.1985). A party seeking a contempt citation must show the respondent's violation of a court order by clear and convincing evidence. *Quinter v. Volkswagen of America*, 676 F.2d 969, 974 (3d Cir.1982). In addition, a contempt citation should not be granted where "there is ground to doubt the wrong-

---

**24.** BIC has challenged only PNI's right of access to exhibits P–37, P–38, and P–39. We limit our holding accordingly.

PNI argues that the district court had supervisory power over the documents because copies had been submitted to the court under seal in the course of Kardos' contempt proceedings. This argument is without merit. PNI did not intervene to secure access to the contempt

record; it sought access to the record in *Littlejohn.*

**25.** The court disposed of the access and contempt issues in the same order, and made no findings of fact specifically regarding Kardos. Because Kardos did not contest the facts, the court must have found that Kardos did not clearly violate the PO by refusing to return depositions and exhibits admitted at trial.

fulness of" the respondent's conduct. *Id.* (quoting *Fox v. Capital,* 96 F.2d 684, 686 (3d Cir.1938)).

▮▮▮▮ Here, Kardos agreed to a protective order that required him to return to BIC "all documents and information subject to this order" at the termination of the proceedings.[26] As an officer of the court, Kardos bound himself to conscientiously adhere to these terms. Scrupulous compliance with court discovery orders is particularly important because our system of discovery relies on the cooperation and integrity of attorneys operating within the guidelines provided by the Federal Rules of Civil Procedure and the provisions of any protective order. Nonetheless, we are constrained to hold that the court did not abuse its discretion in denying BIC's petition for contempt. Our review of the court's order requires us to consider (1) whether the public, including Kardos, had a right of access to the documents while they were a part of the public record; and (2) whether Kardos nonetheless could not retain copies of the documents because he was bound by the PO.

The existence of a public right to access to the judicial record in the *Littlejohn* case

must be determined by weighing the presumption of access and other interests favoring disclosure with those favoring secrecy.[27] *See Bank of America,* 800 F.2d at 344. The district court found that:

> Defendant has not met its burden to show that the interest in secrecy outweighs the presumption of access. Denial of access would serve no important public purpose. Defendant has not shown with specificity how disclosure would work a clearly defined and serious injury to its interests. The information introduced into evidence does not contain trade secrets. In any event, defendant's interest in escaping disclosure of problems with its products which have injured consumers does not outweigh the presumption of openness plus the public interest in disseminating information about consumer goods that cause personal injuries.

If the public had a right of access to the deposition testimony and exhibits admitted into evidence, then Kardos did no more than exercise this right in retaining copies of these documents.

▮▮▮▮ The presumption of public access to evidentiary materials is strong.[28] *Cri-*

26. The PO stipulated to by the parties and approved by the district court's order provided:
    At the conclusion of the proceedings in this action, *all documents and information subject to this Order,* including any copies or extracts or summaries thereof, or documents containing information taken therefrom, shall be returned to counsel for the defendant.

    \* \* \* \* \* \*

    Violation by any persons of the terms of this Order shall be punishable as a contempt of court.

    \* \* \* \* \* \*

    Confidential information developed, revealed by, or included with any discovery proceedings, formal or informal, whether in the form of deposition, transcripts, interrogatory answers, document production, or contained in motions, affidavits, briefs, or other documents submitted to the Court shall be subject to this Order. The Clerk is directed to maintain such documents under seal, to be made available only to the Court and to counsel in these proceedings *until further order of the Court.*
    (Emphasis supplied).

27. The court erroneously found that PNI had a right of access to contested exhibits that had left

the custody and control of the court. *See supra,* section III C. Its holding on the public access issue, however, was also relevant to its disposition of the contempt petition because Kardos retained copies of the deposition testimony and trial exhibits during the period when these materials were a part of the judicial record.

28. BIC contends that there is no strong presumption of access to the exhibits admitted into evidence in this case because the jury did not rely upon them in reaching its decision and because the "right should only extend to materials upon which a judicial decision is based." *Wilk v. American Medical Ass'n,* 635 F.2d 1295, 1299 n. 7 (7th Cir.1980). This emphasis on material used in judicial decisions has served simply to distinguish materials submitted into evidence from the raw fruits of discovery for the purpose of analyzing the presumption of access. *See id.; Tavoulareas v. Washington Post Co.,* 111 F.R.D. at 660; *In re "Agent Orange" Product Liability Litigation,* 104 F.R.D. 559, 567 (E.D.N.Y.1985), *aff'd,* 821 F.2d 139 (2d Cir. 1987). These cases do not support BIC's contention that a presumption of public access to evidence admitted at trial cannot be applied absent a case-by-case review of the extent to which the

*den I,* 648 F.2d at 823. BIC argues, however, that there is no public access right to those portions of the judicial record which contain trade secret or confidential business information. The district court properly considered and rejected these arguments.

▇▇▇ The court found that BIC's documents did not contain trade secrets and its finding of fact is subject to reversal only if clearly erroneous. *Leeper,* 756 F.2d at 307. BIC's contention that the 1983 field audit exhibit and the intercompany memoranda exhibit contained protected trade secrets is without merit. BIC relies on an affidavit which did not specifically state that the two contested exhibits contained trade secret information.[29] The affidavit does support BIC's contention that the documents contain confidential information which might injure its commercial standing. But documents do not contain trade secrets merely because they are confidential. *See, e.g.,* Restatement of Torts § 757 comment b (1939). Under these circumstances, we cannot find that the district court's finding of fact is clearly erroneous.

▇▇▇ Further, non-trade secret but confidential business information is not entitled to the same level of protection from disclosure as trade secret information. A private interest in secrecy has not been weighed heavily once the information has been used at trial, particularly where, as here, the commercial interest stems primarily from a desire to preserve corporate reputation. *See, e.g., Brown & Williamson Tobacco Corp. v. F.T.C.,* 710 F.2d 1165, 1180 (6th Cir.1983) (harm to reputation not sufficient to overcome common law presumption of access), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984).

BIC argues that it has shown how disclosure "would work a clearly defined and serious injury to its interests." The injury that BIC describes is an adverse effect on its disposable lighter sales by competitive use of the information and a potential loss in its capital stock value. However, as we stated in *Publicker,* "[t]he presumption of openness plus the policy interest in protecting unsuspecting people from investing in Publicker in light of its bad business practices are not overcome by the proprietary interest of present stockholders in not losing stock value or the interests of upper-level management in escaping embarrassment."[30] 733 F.2d at 1074; *see also Joy v. North,* 692 F.2d 880, 894 (2d Cir.1982), *cert. denied sub nom. Citytrust v. Joy,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983).

The district court carefully considered each of the factors which favored access or continued secrecy for the documents at issue and assigned appropriate weights to the various interests. We therefore hold that the court did not abuse its discretion in determining that under the present circumstances the presumption of public access and the public interest in the suit outweighed BIC's interest in the continued confidentiality of exhibits and deposition testimony admitted into evidence. The public thus had a right of access to the judicial record in the *Littlejohn* case.

Kardos asserts that he was exercising his right of access when he retained copies of the exhibits and deposition testimony admitted into evidence. BIC essentially contends that Kardos relinquished this right when he agreed to become bound by the terms of the PO. We conclude that the district court correctly denied BIC's petition for contempt. Here, "there is ground to doubt the wrongfulness of" Kardos' con-

---

evidence formed the basis of any eventual decision. *But see In re National Broadcasting Co., Inc.,* 653 F.2d 609, 620–21 n. 61 (D.C.Cir.1981).

**29.** The exhibits were deemed to be of a "proprietary, confidential *and/or* trade secret nature." JA 279–80 (emphasis supplied). The affidavit stated that "the nature of the information contained in these documents implicates many of the procedures that BIC uses in the quality control aspect of lighter manufacture and distribution." The documents at issue are a product of BIC's quality control procedures but do not detail the content of those procedures. BIC's contention that the release of the documents will have an anti-competitive effect is similarly without merit.

**30.** Although *Publicker* was decided under a first amendment analysis, we noted that the same result would have been reached under the common law. 733 F.2d at 1067.

duct, *Quinter*, 676 F.2d at 974, because the protection order did not govern the treatment of items admitted into evidence absent a sealing of the record.

BIC relies on *Kehm v. Proctor & Gamble Mfg. Co.*, 580 F.Supp. 913 (N.D.Iowa 1983), *aff'd*, 724 F.2d 630 (8th Cir.1984). In *Kehm*, the district court held an attorney in civil contempt after he sold and distributed documents covered by a protective order without first obtaining leave of the court. *Id.* at 916. The court there specifically found that the "lack of confidentiality of" documents covered by the protective order was not a defense to the contempt motion. *Id. Kehm*, however, is distinguishable from the facts of this case.

Here, the protective order did not explicitly cover deposition testimony read into the trial record or exhibits admitted into evidence without a sealing of the record. Neither the parties nor the court seemed to treat the PO as dispositive of the confidentiality of documents admitted at trial.[31] Finally, the court properly found that BIC had waived its right to confidentiality with respect to that material which was admitted to the judicial record.

Under these circumstances, we hold that the district court did not abuse its discretion in refusing to impose the serious sanction of civil contempt. Kardos cannot be bound by the provisions of the PO to return to BIC copies of deposition testimony read into the record or copies of exhibits admitted into evidence. The record indicates, however, that Kardos retained a copy of exhibit P–37, which was not admitted into evidence. *See supra* section III A. The district court's denial of BIC's contempt motion must therefore be vacated, in part, and the case remanded for consideration of whether Kardos' retention of this document was sufficient to hold him in contempt.

■ Finally, BIC challenges the district court's refusal to enlarge the record by permitting further discovery. We review the court's determination for an abuse of discretion. *Skehan v. Board of Trustees of Bloomsburg State College*, 590 F.2d 470, 478 (3d Cir.1978), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979). BIC's contention is meritless because the record reflects a lack of diligence in pursuing discovery[32] and because, in any event, BIC had waived its rights under the protective order by permitting the depositions and exhibits to become part of the trial record.

---

**31.** Shortly after the termination of the litigation, for example, an attorney representing plaintiffs in *BIC lighter cases sought copies of deposition* testimony read into the record and exhibits used at trial. Letter to District Court from John W. Andrews, Esq. (October 21, 1986). The court responded with an order stating that "it is not necessary for the Court to order or authorize the release of depositions or exhibits in the possession of counsel." Court Order (October 24, 1986). BIC sought to have this Order amended "to the extent that the release of these exhibits would contravene the terms of the Protective Order." Letter to District Court from William C. Foster (November 3, 1986). The court issued yet another order stating that BIC's request was "unnecessary. See my Order of July 30, 1986 [the protective order]." Whatever this somewhat cryptic series of orders may mean, it would seem that the materials admitted in evidence at trial were arguably not subject to the PO's confidentiality requirements. *See also supra* note 15.

**32.** BIC did not diligently pursue discovery on its contempt motion. BIC first filed a motion for contempt against Kardos in February of 1987. Yet BIC did not suggest the need for further

discovery to determine whether Kardos had disseminated documents improperly until the hearing on the second contempt motion on September 16, 1987. BIC had made no effort to alert the court to this new claim, had not conducted any discovery supporting its contention, and had not requested a continuance to permit further discovery. BIC contends that it was unaware of the possible dissemination of information until September 11, 1987. Yet BIC now relies in part on an article that appeared in the *Philadelphia Inquirer* in April of 1987 which stated that the newspaper had access to "scores of internal BIC memos." BIC's Reply Brief 2 (quoting *Philadelphia Inquirer*, April 12, 1987 at p. 26A).

Further, the evidence relied upon by BIC did not specifically state that PNI had gained access to materials distributed to Kardos under the protective order or that Kardos had been the individual responsible for transmitting them to PNI. In short, the affidavit relied upon by BIC does not provide even circumstantial evidence suggesting that Kardos improperly disseminated confidential BIC documents.

## V.

In conclusion, the district court order granting PNI access to the judicial record is affirmed. We reverse the court's supplementary order holding that exhibits P–37, P–38, and P–39 were a part of the judicial record to which PNI had access. As to BIC's petition against Kardos, we affirm the trial court's denial of the contempt petition based on his retention of copies of items properly found within the judicial record. We remand the case, however, for consideration of whether Kardos may be held in contempt for retaining a copy of exhibit P–37, which was not a part of the judicial record. Finally, we affirm the district court's refusal to permit BIC to enlarge the record in the contempt proceedings by conducting further discovery. Each party to bear its own costs.

SCIRICA, Circuit Judge, dissenting.

I join in much of the majority opinion, but I respectfully dissent from the denial of PNI's public right of access to trial exhibits in this case.

During the past decade this court has consistently reaffirmed the common law public right of access to examine judicial records and documents, including exhibits. *Bank of America Nat. Trust v. Hotel Rittenhouse*, 800 F.2d 339, 343 (3d Cir.1986); *United States v. Martin*, 746 F.2d 964, 968 (3d Cir.1984); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1066–67 (3d Cir.1984); *United States v. Criden*, 648 F.2d 814, 823 (3d Cir.1981); *see Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978). The right was established in English common law, and has been given a broader application in our jurisprudence. *See* Comment, *Public Access to Civil Court Records: A Common Law Approach*, 39 Vand.L.Rev. 1465, 1467 (1986); Note, *All Courts Shall Be Open: The Public's Right to View Judicial Proceedings and Records*, 52 Temp.L.Q. 311, 338–43 (1979). Indeed, at least one court has labeled the public's right to examine judicial records as "fundamental to a democratic state." *United States v. Mitchell*, 551 F.2d 1252, 1258 (D.C.Cir.1976), *rev'd on other grounds sub nom. Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570.

As the majority notes, the rule's basis is twofold: (1) it promotes the public's right to observe, participate, and comment on judicial proceedings, thereby fostering informed public debate; and (2) it promotes understanding of, and the perception of fairness in, the judicial process. *See Bank of America*, 800 F.2d at 345; *Criden*, 648 F.2d at 820–22. Although the right is not absolute, we have held that it creates a "strong presumption" in favor of access, *Criden*, 648 F.2d at 823, and have required that a party seeking to deny access demonstrate "an overriding interest based on findings that closure is narrowly tailored to serve that interest." *Publicker*, 733 F.2d at 1073.

Here, PNI sought access to information admitted into evidence during a public trial. BIC contended that its interest in maintaining the confidentiality of its records outweighed the right of access, and in the alternative, maintained that the exhibits' character as public records was destroyed by their return to counsel pursuant to a local rule of court of the Eastern District of Pennsylvania. The district judge applied the *Criden* test and found a right of access. In addition, he noted that counsel's withdrawal of the exhibits after trial and final settlement did not destroy their character as public records. I agree, and accordingly I would affirm the judgment of the district court granting access.

Balancing the various factors relevant to the right of access is a task committed to the discretion of the district court. *Bank of America*, 800 F.2d at 344 (citing *Nixon*, 435 U.S. at 599, 98 S.Ct. at 1312). The district judge carefully examined the competing interests and determined that the records could be provided without inconvenience. The presence of a local rule of operating procedure permitting destruction or return of exhibits within sixty days after dismissal, *see* Local Rule 39(e), does not undermine this discretionary function.

Even if application of the local rule is viewed as transforming the access inquiry into a legal question permitting plenary review, existence of the rule cannot annul the common law's strong presumption of access that attaches to records when they are introduced into a public judicial proceeding. It is well established that "[n]o statute is to be construed as altering the common law, farther than its words import." *Shaw v. Railroad Co.*, 101 U.S. (11 Otto) 557, 565, 25 L.Ed. 892 (1879); *see also Norfolk Redev. & Housing Auth. v. C & P Tel. Co.*, 464 U.S. 30, 35–36 & n. 7, 104 S.Ct. 304, 307 & n. 7, 78 L.Ed.2d 29 (1983); *Mobile Gas Serv. Corp. v. Federal Power Comm'n*, 215 F.2d 883, 889 (3d Cir.1954), *aff'd*, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956). Any statutory modification of common law must be made by express legislative enactment. We are not faced with an act of that magnitude; rather, we are faced with a conflict between a fundamental common law right and a judicial rule of internal procedure. Thus, if a statute cannot implicitly override the common law, neither may a local rule of court.

But for the passage of a brief period of time beyond the sixty-day limit set in the local rule, PNI could have obtained access pursuant to the district court's application of *Criden*. For whatever reason, PNI deemed trial exhibits essential to its ability to effectively report on the topic. Its only error was that it waited a bit too long before launching its investigation of the circumstances underlying the issues litigated in the BIC case.

The significance of public issues and the public interest in a judicial proceeding and its accompanying evidence cannot be forced to comport with notions of administrative convenience. For example, heightened public scrutiny of a legal issue or a judicial proceeding may not arise during the actual pendency of the trial or subsequent appeal. At the time of litigation, the issue may be of little interest to anyone other than the named parties, or the proceeding may occur in a small community where the media has neither the ability nor the resources to contemporaneously report every ongoing legal dispute. Similarly, allegations of impropriety, misconduct, or irregularity may not surface until months after the case is closed.

The effect of today's decision will be felt beyond the newsroom of PNI. Any member of the public, whether a student of the law, an interested observer, or a historian, will be required to assert his rights within two months or lose them forever. Such a result is at odds with the purposes of granting public access.

I recognize, of course, that in some cases the absence of any temporal or practical limits on retention of court records and exhibits may result in burdens on the parties and the courts. This, however, is not such a case. Although the clerk had returned the exhibits to BIC, opposing counsel asserted that his copies of the exhibits were public records. Moreover, BIC retained the contested items; they had not been destroyed. Thus, the practical reasons for denying access were not present here, and will not be present in many other similar cases.

In cases where practical and temporal limits are a major concern, the district court should consider the burden on the parties and the court, and the timeliness of the request for access, as additional factors influencing its decision on access. I do not view a local rule permitting return or destruction of exhibits as controlling the determination of right of access. Rather, the district judge should be permitted to inquire whether the contested items are still available from *any* source. If the items exist, their character as judicial records renders them presumptively open to public examination, absent "improper purposes." *See Nixon v. Warner Communications*, 435 U.S. at 598, 98 S.Ct. at 1312.