**REPUBLIC OF the PHILIPPINES; National Power Corporation**

**v.**

**WESTINGHOUSE ELECTRIC CORPORATION; Westinghouse International Projects Company; Burns and Roe Enterprises, Inc.,**

**Westinghouse Electric Corporation and Westinghouse International Projects Company, Appellants,**

**Public Citizen, Inc., Essential Information Inc., and Dr. Jorge Emmanuel, Appellees–Intervenors.**

**No. 91–5860.**

United States Court of Appeals, Third Circuit.

Sur Motion for a Stay Nov. 8, 1991.

Decided Nov. 18, 1991.

Raymond M. Tierney, Jr., William D. Sanders, Shanley & Fisher, P.C., Morristown, N.J., David Boies, Richard W. Clary, Cravath, Swaine & Moore, New York City, Jonathan D. Schiller, Randall L. Speck, Donovan, Leisure, Rogovin, Huge & Schiller, Washington, D.C. (Jerome J. Shestack, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, Pa., of counsel), for appellants Westinghouse Elec. Corp. and Westinghouse Intern. Projects Co.

Michael E. Tankersley, Alan B. Morrison, Public Citizen Litigation Group, Priscilla Budeiri, Arthur H. Bryant, Trial Lawyers for Public Justice, P.C., Washington, D.C., Philip Elberg, Medvin & Elberg, Newark, N.J., for appellees-intervenors, Public Citizen, Inc., Essential Information, Inc., and Dr. Jorge Emmanuel.

Before SLOVITER, Chief Judge, and SCIRICA, Circuit Judge.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

Appellants Westinghouse Electric Corporation and Westinghouse International Projects Company (collectively Westinghouse) have moved this court for a stay pursuant to Fed.R.App.P. 8(a) pending their appeal of the order of the district court directing the unsealing of material filed in support of or in opposition to the motion for summary judgment filed by Westinghouse. In accordance with this court's procedure, the motion for a stay was directed to a two-judge motion panel. We will deny the stay, but set forth the analysis underlying our decision in order to explicate an important legal issue raised by the movant and our standards for acting on stays pending appeal.

### I.

*Procedural and Factual History*

On December 1, 1988, the Republic of the Philippines (the Republic) and National Power Corporation (NPC), the Philippine government agency that oversees electrical power generation, filed a 15–count complaint in the District Court for the District of New Jersey against the two Westinghouse companies and Burns and Roe Enterprises, Inc. The complaint alleged, *inter alia,* that fourteen years earlier Westinghouse had secured a turnkey contract from NPC to construct a nuclear power plant in the Philippines by bribing then-President Ferdinand Marcos, and that Burns and Roe Enterprises had procured the consulting contract and the architectural and engineering subcontract by the same means. The bribes were allegedly effected through defendants' payment of commissions to Herminio T. Disini, a special sales representative retained by defendants, who allegedly paid over to President Marcos all or a substantial part of the commissions. Disini was a close friend of President Marcos, and his wife was Mrs. Marcos' cousin and personal physician.

The complaint included a claim for tortious interference with the fiduciary duty allegedly owed by former President Marcos and claims under RICO and other federal statutes and state law. The Republic and NPC sought rescission of the contracts and damages. Westinghouse filed a motion to stay the action pending arbitration pursuant to the arbitration clause contained in the construction contract. The district court stayed all claims relating to work under the contract and those alleging fraud in the inducement or execution thereof pending arbitration, but left pending and unstayed the tortious interference claim and a related conspiracy claim.

By agreement of the parties (but apparently at the instigation of Westinghouse) the magistrate entered an "umbrella" protective order on October 26, 1989, by which Westinghouse could designate certain information produced as confidential. Soon thereafter the parties began an extensive program of discovery. In December 1989, the Republic, pursuant to the terms of the protective order, challenged the confidentiality designations of approximately 500 documents. The magistrate held two hearings. Thereafter, at the magistrate's direction, the parties agreed to an amended protective order in which some of the initial constraints placed upon the use of confidential discovery material were relaxed. The magistrate approved the amended protective order on March 6, 1990.[1]

---

**1.** This protective order permitted the parties to designate material as "confidential," but "only upon a good-faith belief that the material is entitled to protection under the Federal Rules of Civil Procedure." The order also provided for a mechanism by which the parties could object to a confidentiality designation. Under this process, the party making the designation, when

Defendants filed motions for summary judgment on the two claims which were not subject to arbitration. They asserted the lack of any evidence that defendants paid bribes to President Marcos or that he influenced the contract award, and they also asserted, *inter alia*, the statute of limitations, laches and estoppel. On May 28, 1991, the district court heard oral argument on the defendants' motions for summary judgment. The hearing was open to the public, and the evidence in the court record was freely discussed and quoted during the hearing. The transcript of the oral argument, including discussion of the evidence, was filed in the public record and reported in the press.

On September 20, 1991, the district court filed for publication an extensive opinion denying defendants' motions for summary judgment. *Republic of the Philippines v. Westinghouse Electric Corp.*, 774 F.Supp. 1438 (D.N.J.1991). The court found "ample evidence to permit a reasonable jury to find that the Disini commissions were intended to be paid in whole or in part to President Marcos and were in fact paid in whole or in part to him or upon his direction." *Id.* at 1445. In addition, the district court rejected the defendants' argument that former President Marcos stood above the law and that there could be no recovery even had a bribe been paid. *Id.* at 1451–64. Finally, the court refused to limit damages, as defendants suggested, based either on the act of state doctrine or other doctrines asserted. *Id.* at 1466–67.

On August 23, 1991, Public Citizen, Inc., Essential Information, Inc., and Dr. Jorge Emmanuel (collectively the intervenors)[2]

filed a motion to intervene for the limited purpose of moving for modification of the protective order to assure public access to future filings, and to unseal court records that had already been placed under seal.[3] The intervenors argued that sealing the summary judgment record was inconsistent with both the common law right of access to judicial records and the First Amendment. The intervenors called on Westinghouse to identify any specific materials that would warrant limiting public access to this information.

Following oral argument, the district court entered an order on October 18, 1991, partially granting the intervenors' motion to unseal the court records and to modify the amended protective order. In particular, the district court ordered that "all materials filed in support of or in opposition to the summary judgment motion [be unsealed]." *Republic of the Philippines v. Westinghouse Electric Corp.*, 139 F.R.D. at 51. The district court also modified the amended protective order so that no materials could be filed under seal in the future without an order entered by the magistrate made after due notice to the intervenors. In its accompanying opinion, the district court stated that it "examined th[e] record and observed nothing that would overcome the applicable [common law] presumption of access." *Id.* at 61.

The district court delayed the effective date of its order to unseal the documents for seven days to permit Westinghouse to seek further relief. Westinghouse did not seek to supplement the record in the district court to provide support for its claim of confidentiality, nor did it seek reconsideration to allow it to demonstrate that par-

---

challenged, had to apply to the court for an order maintaining the designation.

**2.** As the district court noted in its opinion supporting its order removing the seal on those discovery materials filed in connection with the motion for summary judgment:

Intervenors Public Citizen and Essential Information both publish magazines that report on corporate corruption, the safety and reliability of nuclear power plants and the regime of former President Marcos.... Intervenor

Dr. Jorge Emmanuel is a chemical engineer who has studied, lectured and written extensively on the dangers associated with the [nuclear power plant built by Westinghouse]. *Republic of the Philippines v. Westinghouse Electric Corp.*, 139 F.R.D. 50, 54 (D.N.J.1991).

**3.** In response, the Republic filed a statement that it believed that the intervenors were entitled to the relief they sought. Westinghouse did not oppose the standing of the intervenors. Burns and Roe Enterprises filed no response to the motion.

ticular materials in the summary judgment record merited confidential status.

■ The district court denied Westinghouse's motion for a stay pending appeal but, with the consent of the intervenors, entered a ten day stay to permit Westinghouse to appeal. Westinghouse appealed from the court's order directing unsealing of the documents filed in connection with the motion for summary judgment.[4] At the expiration of that period, we extended the stay for the short period necessary to analyze the relevant issues and prepare this opinion.

## II.

*Standards for a Stay Pending Appeal*

■ Because this court ordinarily grants or denies a stay pending appeal without opinion, there is little reported authority discussing the standard we apply in entering such orders. We are guided, however, by the relatively recent opinion of the Supreme Court in *Hilton v. Braunskill*, 481 U.S. 770, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987), considering the standard applicable under Fed.R.App.P. 8(a) for granting a stay of a district court's order pending appeal. Although the issue in *Hilton* involved the grant of a stay of an order granting a petition for habeas corpus, and thus implicated the issue of federal comity to state courts not applicable in this case, the Court explained that it was "logical to conclude that the general standards governing stays of civil judgments should also guide courts when they must decide whether to release a habeas petitioner pending the State's appeal." *Id.* at 776, 107 S.Ct. at 2118–19. It follows that the factors enunciated by the Court in *Hilton* are equally applicable to this court's consideration of whether to issue a stay in this case.

Those factors are:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

The Court noted that "the traditional stay factors contemplate individualized judgments in each case." *Id.* at 777, 107 S.Ct. at 2119. Therefore, we will proceed to analyze each of the four factors enunciated by the Supreme Court in light of the individualized considerations relevant here.

## III.

*Irreparable Injury*

■ At the outset, we note that Westinghouse argues that it will suffer serious, irreparable injury because the purpose of the appeal would be mooted if the unsealing order is not stayed and confidential discovery materials are made available for public consumption. Westinghouse argues "[t]hat loss of an appellate right is in and of itself irreparable injury." Appellants' Memorandum of Law at 16. Certainly the fact that the decision on the stay may be dispositive of the appeal in some cases is a factor that an appellate court must consider, but that alone does not justify pretermitting an examination of the nature of the irreparable injury alleged and the particular harm that will befall the appellant should the stay not be granted.

Arguably, when the claim concerns unsealing of material that merits permanent shielding from public view, the mere disclosure of it pending appeal could cause irreparable injury. That is not the issue in this case. Westinghouse did not argue either here or in the district court that any specif-

---

4. Westinghouse asserts that an order granting public access to sealed portions of the pretrial record is appealable as of right. Our cases have held that orders releasing sealed material and denying a motion to unseal are collateral orders within the meaning of 28 U.S.C. § 1291. *See Bank of America Nat'l Trust & Savings Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339 (3d Cir. 1986); *United States v. Smith*, 787 F.2d 111 (3d

Cir.1986). Both of those appeals raised a significant legal issue which had not previously been determined by this court, as does this appeal. Therefore, we do not decide whether an order by the district court with respect to sealing or unsealing which implicates only that court's discretion without an underlying novel legal issue would be considered a collateral order for purposes of immediate appeal.

ic material merited such protection. It concedes that the proffered admissible evidence will be publicly available in conjunction with witnesses' testimony at the trial currently scheduled to begin on February 6, 1992. Appellants' Memorandum of Law at 20. Indeed, the very protective order upon which it relies explicitly excluded from its scope any protection of material to be used at trial.

■ Westinghouse had an opportunity to show particularized harm when the district court afforded it an opportunity to file additional material. It failed to do so. Although Westinghouse suggests that the disclosure of the material in the context of the trial will put the documents "in proper context," *id.*, we cannot find that the release of these documents some four months before they will be publicly available constitutes irreparable injury of the nature as to warrant a stay.

■ Moreover, the district court found that Westinghouse had made no showing of irreparable injury because, *inter alia*, the "substance of much of this material is already public in the form of arguments which appear in transcripts of the proceedings relating to the summary judgment motion." Telephone Conference Transcript, October 25, 1991, at 5. Westinghouse has not provided any persuasive response to this conclusion. Although there may be some additional embarrassment to Westinghouse, we believe it unlikely that such embarrassment qualifies as irreparable injury in the case of corporate defendants. Nonetheless, although we do not believe that Westinghouse has demonstrated that it will be irreparably harmed in a manner cognizable by this court if we do not grant a stay, we will assume *arguendo* that Westinghouse has shown sufficient possibility of irreparable injury to warrant consideration of the other stay factors.

## IV.

### Success on the Merits

#### A.

##### Right of Access

■ Westinghouse argues that the intervenors stand on no higher footing for purposes of the issue before us than does the public. We agree, and therefore analyze Westinghouse's likelihood of success on the merits from the standpoint of the public's right of access to the material.

Westinghouse concedes that the principle that the public holds a common law right of access to judicial proceedings and judicial records is firmly accepted in this circuit. *See Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir.1988); *Bank of America National Trust v. Hotel Rittenhouse*, 800 F.2d 339, 343 (3d Cir.1986); *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1066 (3d Cir.1984). We have recognized that "[t]he common law right of access is not limited to evidence, but rather encompasses all 'judicial records and documents.'" *United States v. Martin*, 746 F.2d 964, 968 (3d Cir.1984) (quoting *Nixon v. Warner Communications*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978)); *see also Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir.1983) (recognizing "strong common law presumption in favor of public access to court proceedings and records"), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984). In addition, we have stated that the First Amendment, independent of the common law, protects the public's right of access to the records of civil proceedings. *Publicker Industries*, 733 F.2d at 1070. In this case, however, we confine our analysis to the common law.

■ Our precedent makes clear that the presumption arising out of the common law right of access to judicial proceedings and records, usually considered by the Supreme Court in connection with criminal trials and proceedings, *see, e.g., Press–Enterprise Co. v. Superior Court* (Press–Enterprise II), 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (preliminary criminal hearing); *Press–Enterprise Co. v. Superior Court* (Press–Enterprise I), 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (voir dire in criminal action); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (testimony dur-

ing criminal trial); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (criminal trial),[5] applies in the context of civil proceedings as well, *Publicker Industries,* 733 F.2d at 1066.

We have explained that application of the presumption in civil cases is appropriate because,

> [t]he public's exercise of its common law access right in civil cases promotes public confidence in the judicial system.... As with other branches of government, the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness.

*Littlejohn,* 851 F.2d at 678. Access to civil proceedings and records promotes "public respect for the judicial process," *Globe Newspaper,* 457 U.S. at 606, 102 S.Ct. at 2620, and helps to assure that judges perform their duties in an honest and informed manner, *Bank of America,* 800 F.2d at 345. Accordingly, we have applied the presumption of public access to a variety of civil hearings and records, including the transcript of a civil trial and exhibits admitted at trial, *Littlejohn,* 851 F.2d 673; settlement documents filed with the district court as well as post-settlement motions, *Bank of America,* 800 F.2d 339; and a civil hearing for a preliminary injunction and transcripts of that hearing, *Publicker Industries,* 733 F.2d 1059.

■ Westinghouse argues that the right of access "does not extend to papers submitted in conjunction with a non-dispositive motion and that the District Court erred in holding otherwise." Appellants' Memorandum of Law at 25. It argues that the discovery materials it submitted to support

its motion for summary judgment fall within "a gray area somewhere along the continuum between trials at one extreme and raw fruits of discovery at the other." *Id.* Thus, its argument that it has shown the likelihood of success on the merits is based on its contention that the considerations underlying our opinions allowing public access to judicial proceedings and judicial records are inapplicable to material filed in support of a non-dispositive motion.

We do not find this argument persuasive, at least in this context. When Westinghouse filed its motion for summary judgment, it did so in the hope that it would be a dispositive motion, and with the belief that it was entitled to such relief. Fed. R.Civ.P. 11 requires no less. We assume that Westinghouse followed the requirement of Rule 56 and supported its motion only on the basis of "such facts as would be admissible in evidence." Fed.R.Civ.P. 56(e). Thus, if, as Westinghouse concedes, there would have been a right of public access had the motion been granted, we fail to see why such a right did not attach merely because the motion was denied.

The same considerations that underlie the common law right of access to judicial proceedings apply here. When the district court denied Westinghouse's motion, it shaped the scope and substance of the litigation and put the litigants squarely on a path toward trial, thereby delaying resolution of the underlying dispute. Therefore, the need for public scrutiny of the basis of the district court's decision is almost as important as when the court has made a dispositive ruling.

We fail to appreciate Westinghouse's argument that the need for scrutiny is diminished because the trial is scheduled for the near future. As Justice Brennan wrote in his concurrence in *Richmond Newspapers,* "public access to court proceedings is one of the numerous 'checks and balances' of

---

5. We have found the presumption of access to apply to transcripts of sidebar and chambers conferences in a criminal action where evidentiary or other substantive rulings are made, *United States v. Smith,* 787 F.2d 111 (3d Cir. 1986); to audiotapes admitted into evidence and

played to the jury during a public criminal trial, *Martin,* 746 F.2d 964 (3d Cir.1984); and to videotapes admitted into evidence and played to the jury during a public criminal trial, *United States v. Criden,* 648 F.2d 814 (3d Cir.1981).

our system, because 'contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power.'" 448 U.S. at 592, 100 S.Ct. at 2835 (quoting In re Oliver, 333 U.S. 257, 270, 68 S.Ct. 499, 506, 92 L.Ed. 682 (1948)) (emphasis added). The "contemporaneous review" factor supports access at the very least by the announcement by the district court of its decision, absent persuasive countervailing interests.

 Neither our decisions nor those of other courts limit the public access right to trials. We have stated that the presumption in favor of public access applies not only to all civil trials and records but also to "motions filed in [civil] court proceedings." Bank of America, 800 F.2d at 343. We explained, "the [district] court's ... action on a motion [is a] matter[ ] which the public has a right to know about and evaluate." Id. at 344. Westinghouse argues this language was too broad. Without considering whether there might be a basis to distinguish motions that are merely part of the discovery proceedings, we conclude for the reasons explained above that papers filed in connection with a motion for summary judgment are not entitled to be shielded from public access merely because the district court denied the motion rather than granted it.

Other circuits have also held that the right of public access applies to the material filed in connection with a motion for summary judgment. See Joy v. North, 692 F.2d 880 (2d Cir.1982), cert. denied, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983); Rushford v. New Yorker Magazine, 846 F.2d 249 (4th Cir.1988); accord In re Continental Illinois Sec. Litig., 732 F.2d 1302, 1309 (7th Cir.1984) (presumption of access applies to hearings held and evidence introduced in connection with motion to terminate derivative action). Although Westinghouse notes that the courts in those cases granted summary judgment, the courts did not make that distinction.

Other courts have granted public access to documents filed in connection with preliminary motions that were denied. For example, in Cianci v. New York Publish-

ing Co., 88 F.R.D. 562 (S.D.N.Y.1980), the district court vacated its earlier protective order to allow for public access to discovery materials filed in connection with defendants' unsuccessful motion to dismiss. In so ruling, the court found relevant that the material had become part of the public record because "[t]he documents in question have ... been used by the parties in their arguments relating to defendants' motion to dismiss and have been considered by both this court and the Court of Appeals." Id. at 564.

In In re Agent Orange Product Liability Litig., 98 F.R.D. 539 (E.D.N.Y.1983), the district court unsealed all materials submitted in connection with summary judgment motions, even though some of those motions were denied. See id. at 547 (emphasis added). Finally, we note that in In re Petroleum Products Litig., 101 F.R.D. 34 (C.D.Cal.1984), a consolidated petroleum products antitrust case, before the district court made a decision on the motions filed by the parties for summary judgment, it lifted the "umbrella" protective order it had initially granted in order to provide public access to certain pretrial materials filed in connection with those motions. The court explained that providing the "public an opportunity to assess the correctness of the judge's decision" was an important justification for allowing public access, id. at 43, and that "in determining which items are presumptively open, there seems to be no real justification for drawing a line between documents submitted to the court in connection with a motion before the judge decides the motion and the same documents after the decision." Id.

In the face of this line of precedent, Westinghouse relies on only one case, In re The Reporters Committee for Freedom of the Press, 773 F.2d 1325 (D.C.Cir.1985), to support its contention that there is no common law presumption of access to papers filed in connection with a motion for summary judgment. There are significant distinctions between Reporters Committee and the case before us. In Reporters Committee, the President of Mobil Oil Company and his son filed a libel suit

against the Washington Post Company and some individuals. Mobil, which was not a party, produced the documents which it deemed confidential pursuant to a protective order, and that protection was extended to some of the documents used by the parties in their cross-motions for summary judgment. Ultimately, access to the documents was made available, but reporters who had intervened in an unsuccessful attempt to get earlier access to the material contended, in an appeal after the case concluded favorably to the Washington Post, that the sealing order violated the Constitution. The court, in an opinion by then Judge (now Justice) Scalia, held otherwise.

However, that case did not involve the common law right of access, but instead was limited to the reporters' claim of a constitutional right grounded in the First Amendment. It is a distinction the court emphasized, stating, "[b]ut even accepting as representative of current law the modern dicta which, without distinguishing between prejudgment and post-judgment, announce a 'public right of access' in civil cases, *see, e.g., Ottaway Newspapers, Inc. v. Appeals Court,* 372 Mass. 539, 362 N.E.2d 1189 (1977), we cannot discern an historic practice of such clarity, generality and duration as to justify the pronouncement of a *constitutional rule* preventing federal courts and the states from treating the records of private civil actions as private matters until trial or judgment." *Reporters Committee,* 773 F.2d at 1336 (emphasis in original). The court expressly noted that conceivably the federal common law can go beyond constitutional prescriptions. *Id.* at 1340.

A second significant distinction is that the information accorded confidentiality in *Reporters Committee* was material produced by a non-party witness rather than, as here, information offered by a party in the litigation in support of a motion it hoped would be dispositive. As we stated in *United States v. Criden,* 648 F.2d 814, 829 (3d Cir.1981), "courts may appropriately exercise their discretion to deny copying

for rebroadcast of evidence which may inflict unnecessary and intensified pain *on third parties* who the court reasonably finds are entitled to such protection." (Emphasis added).

In light of the distinctions between *Reporters Committee* and this case, and the substantial authority elsewhere holding applicable the presumption of access in situations comparable to that here, we believe that Westinghouse has failed to show that it is likely to prevail in its argument that as a matter of law the district court erred in holding that the common law presumption in favor of public access was applicable to the material filed by Westinghouse in connection with its motion for summary judgment.

## B.

### *Countervailing Interests*

■ Of course, the applicability of such a presumption is not alone dispositive of the inquiry into the likelihood of success on the merits. The presumption is just that, and thus may be rebutted. As we have noted in the past, "[j]ust as the right of access is firmly entrenched, so also is the correlative principle that the right of access ... is not absolute." *Bank of America,* 800 F.2d at 344. Further, "the strong common law presumption of access must be balanced against the factors militating against access." *Id.* We therefore must consider whether Westinghouse has borne its burden to overcome the presumption of access.

■ Westinghouse contends that it will suffer serious competitive harm if the materials filed in connection with its motion for summary judgment are unsealed. We do not denigrate the importance of that interest. In fact, we have expressly recognized that "courts may deny access to judicial records ... where they are sources of business information that might harm a litigant's competitive standing," *Littlejohn,* 851 F.2d at 678.

Westinghouse asserts that the district court assumed that only trade secrets may be protected from public view and that the district court ruled as a matter of law that competitive injury, unrelated to improperly disclosed trade secrets, is insufficient to overcome the presumption of access. Our reading of the district court's decision discloses no such assumption or holding.

Although the district court referred to trade secrets in its oral decision denying Westinghouse's emergency application for a stay, it did not limit its evaluation strictly to trade secrets. The court's statement was made in the context of its ruling on irreparable injury, and it merely commented that this material was different from a trade secret which, once disclosed, is lost. In its written opinion, the district court expressly recognized that "[t]he potential effects of the disclosure of business information that might harm the litigant's competitive standing may in some cases meet the burden of the judicial record under seal." *Republic of the Philippines*, 139 F.R.D. at 61 (citation omitted). Although the district court did discuss such information in relation to trade secrets, it did not state that only trade secrets could be protected, and we see no error of law.

We have previously stated that such business information alleged to be confidential "is not entitled to the same level of protection from disclosure as trade secret information." *Littlejohn*, 851 F.2d at 685. The district court, which had previously reviewed the summary judgment record in detail, made a specific finding that it found nothing of record that "would classify as confidential at this stage in the proceedings." Hearing Transcript, Oct. 15, 1991, at 14. The district court noted that "it is likely that Westinghouse is concerned most about potential embarrassment and injury to reputation." *Republic of the Philippines*, 139 F.R.D. at 62. Westinghouse's memorandum on appeal, which fails to refer to any specific type of competitive harm, also suggests that it is the company's public image that is at stake. That is not enough to rebut the presumption of access.

Westinghouse has failed to offer evidence to counter this finding or to substantiate its claim that the disclosure of the summary judgment records at issue here would result in any type of competitive disadvantage. It relied entirely on its 1989 affidavits without any current evidence to show how public dissemination of the pertinent materials now would cause the competitive harm it claims. Without a more "particularized showing of the need for continued secrecy," *Bank of America*, 800 F.2d at 346, Westinghouse has failed to meet its burden.

In light of the applicability of the common law presumption in favor of public access to materials filed with the district court in connection with a motion for summary judgment and Westinghouse's failure to present specific evidence showing how release of those materials would result in competitive harm at this time, we conclude that Westinghouse has not made a strong enough showing that it is likely to succeed on the merits of this case to warrant a stay.[6]

## V.

### Public Interest

Because neither party has suggested that interested parties other than the public will be substantially injured by the grant or denial of a stay, we turn to the public interest issue. In denying the stay, the district court referred to the interest of the public "in knowing what goes on in the courthouse and what lies behind opinion and actions of judges." Telephone Conference Transcript, October 25, 1991, at 6. As

---

6. Because the issue before us is limited to access to documents filed in connection with a motion for summary judgment, we have no occasion to consider the protection of documents or other information disclosed in discovery proceedings that have not been so used. *See* Fed.R.Civ.P. 26(c); *see also Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 529 F.Supp. 866, 900 n. 65 (E.D.Pa.1981).

our previous discussion has pointed out, that is a substantial interest.

Commentators have recognized that under certain circumstances access to judicial records promotes public health and safety by not allowing secrets hidden in court records to be shielded from public view. Lloyd Doggett & Michael Mucchetti, *Public Access to Public Courts: Discouraging Secrecy in the Public Interest*, 69 Tex. L.Rev. 643, 648 (1991). In addition, public access to judicial records discourages parties from denying the existence of certain documents in subsequent litigation, thus encouraging "greater integrity from attorneys and their clients." *Id.* at 650. Access to civil proceedings and records also acts as a valuable source of information in civil cases that have a "public" character. *See Brown & Williamson Tobacco*, 710 F.2d at 1179 ("The resolution of private disputes frequently involves issues and remedies affecting third parties or the general public."). For example, "a civil matter may reflect alleged fraud that could have criminal, not merely civil, implications." *Mokhiber v. Davis*, 537 A.2d 1100, 1122 (D.C.App. 1988) (Ferren, J., concurring and dissenting).

Finally, we note that by opening the judicial process to greater public scrutiny, access to the judicial process reinforces the democratic ideals of our society. Public access provides greater opportunities for the public to become educated about the workings of the civil judicial process. In addition, access to judicial proceedings and records helps to impart legitimacy to the pronouncements of our rather insulated federal judiciary.

 Applying these general principles to this case, it is apparent to us that the public interest encompasses the public's ability to make a contemporaneous review of the basis of an important decision of the district court. Certainly, the allegation of bribes by a major United States corporation to the leader of a foreign country is a matter of public interest, which could give rise to public debate. While we appreciate that Westinghouse may prefer to have the sealed material made public only in the context of its own witnesses' explanation for Westinghouse's actions, that preference does not outweigh the strong public interest in understanding why Westinghouse sought summary judgment and why the district court denied it.

## VI.

### *Conclusion*

 Judge Debevoise's opinion unsealing the material filed in connection with Westinghouse's motion for summary judgment presented a carefully reasoned analysis of the applicable legal principles. In reviewing it for purposes of a stay, we find no manifest error of law. The court's underlying factual findings, primarily relating to the failure of Westinghouse to support its opposition to access on the basis of particularized competitive injury, have ample support in the record. Furthermore, in the absence of an error of law, whether to release material claimed to be confidential is committed to the discretion of the district court. *See Criden*, 648 F.2d at 817–19. Thus, in arguing the merits of its appeal, Westinghouse will have to overcome the considerable hurdle of showing an abuse of discretion.

We have examined all of the factors relevant to whether to grant a stay pending appeal and can find no factor militating in favor of such a stay and numerous reasons, articulated above, justifying denial of a stay. Accordingly, Westinghouse's motion for a stay is hereby denied.