**COOK INCORPORATED, Plaintiff,**

v.

**BOSTON SCIENTIFIC CORPORATION; Scimed Life Systems, Inc.; and Meadox Medicals, Inc., Defendants.**

No. IP 99–361–C–Y/F.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Nov. 28, 2001.

Aaron J. Kramer, Schiff Hardin & Waite, Allan J. Sternstein, Brinks Hofer Gilson & Lione, Chicago, IL, Lawrence A. Steward, Brinks Hofer Gilson & Lione, Indianapolis, IN, for plaintiff.

John F. Prescott Jr., Ice Miller, Indianapolis, IN, Paul F. Ware Jr., Goodwin Proctor & Hoar LLP, Boston, MA, for defendants.

**ENTRY and ORDER on plaintiff's motion for a protective order (doc. no. 64) and defendants' cross-motion for a protective order (doc. no. 67).**

FOSTER, United States Magistrate Judge.

In this case, the plaintiff, Cook, Inc., claims that the defendants are infringing one of its patents for a medical device known as a "Z-stent". Because commercially sensitive information has been and will be requested in discovery and the plaintiff and the defendants are direct competitors in many lines of medical devices, the parties agree that a protective order is warranted, but they disagree on the terms.

The principal difference is the amount of information each wants to restrict to trial or outside counsel only. Defendants first proposed that only pending patent applications be restricted to outside counsel. Cook counter-proposed a much broader range:

(a) the content of or strategy relating to pending patent applications or drafts of patent applications;

(b) trade secrets, know-how or proprietary data, business, financial or commercial information, the disclosure of which is likely to cause harm to the competitive position of the Designating Party;

(c) non-public filings with, non-public material maintained for inspection by, or non-public proceedings before the Food and Drug Administration or any foreign counterpart;

(d) financial information that is not otherwise publicly available;

(e) information relating to unreleased upstream products or products in development; and

(f) information that is protected from public disclosure by any statute, rule, or judicial or administrative decision.

(*Memorandum in Support of Cook Incorporated's Motion for Protective Order* ("*Brief*") (doc. no. 65), Exhibit B, ¶ 1). The defendants do not oppose categories (a), (d), and (e) because they concede that those categories refer to "specific trade secret information" which warrants restriction to outside counsel only. (*Defendants' Opposition to Cook Incorporated's Motion for Protective Order* etc. ("*Response*") (doc. no. 68), p. 3). Because the information in categories (c) and (f) is already denoted as "non-public", the defendants argue that adequate protection is afforded by Cook's proposed "Confidential" label which will ensure that the public does not have access to it but will allow defendant's inside counsel and experts to assess it. The defendants argue that category (b) is too broad, encompassing much more than Cook's trade secrets, and will allow Cook to classify all business documents as "Trial Counsel's Eyes Only" material. The defendants contend that categories (a), (d), and (e) "encompass all the trade secrets needing and deserving of a 'Trial Counsel's Eyes Only' designation." (*Response*, p. 5).

Fed.R.Civ.P. 26(c) provides that "for good cause shown, the court … may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including … that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way…." The "good cause" standard requires a balancing of the public and private interests involved. *Citizens First National Bank of Princeton v. Cincinnati Insurance Co.,* 178 F.3d 943, 945, 946 (7th Cir.1999); *Cumberland Packing Corp. v. Monsanto Co.,* 184 F.R.D. 504, 505, 506 (E.D.N.Y.1999); *In re Eli Lilly & Co., Prozac Products Liability*

*Litigation,* 142 F.R.D. 454, 456 (S.D.Ind. 1992) ("while Rule 26(c) merely states 'good cause' as the standard for ruling on protective orders, 'the federal courts have superimposed a somewhat more demanding balancing of interests approach to the Rule.' "). Because the public "has an interest in what goes on at all stages of a judicial proceeding", *Citizens First,* at 945, including the pre-trial discovery stage, *id.* at 946 ("Most cases endorse a presumption of public access to discovery materials")[1], the judge, as "the primary representative of the public interest in the judicial process", has an independent duty to balance the public's interest against the "property and privacy interests of the litigants", *id.* at 945. A court may not issue a "blanket" or "umbrella" protective order that gives the parties *carte blanche* to decide which information to protect, but it also need not determine good cause on a document-by-document basis. *Id.,* at 945–46. A protective order may authorize the parties to restrict public access to properly demarcated categories of legitimately confidential discovery documents if the judge, first, satisfies himself that the parties know what the legitimate categories of protectable information are and are acting in good faith in deciding which parts of the discovery information qualify and, second, makes explicit that any party and interested member of the public may challenge the designation of particular documents. *Id.,* at p. 946. *See In re Bridgestone/Firestone, Inc., IP00–9373–C–B/S ATX, ATX II, and Wilderness Tires Products Liability Litigation,* 198 F.R.D. 654, 656–57 (S.D.Ind.2001).

Both Cook's and the defendants' proposed protective orders allow any party or interested member of the public to challenge particular confidentiality designations. Therefore, the Court's evaluation of the propriety of the proposed protective orders focuses on whether the parties have identified legitimate categories of protectable information, whether they sufficiently understand the parameters of those categories, and whether they will act in good faith in making designations within those categories.

Both sides agree that trade secrets can be restricted to outside counsel's eyes only but neither side's proposed orders include a sufficient definition of trade secrets on which the Court can rely. As noted above, Cook submitted a category described as "trade secrets, know-how or proprietary data, business, financial or commercial information, the disclosure of which is likely to cause harm to the competitive position of the Designating Party", a definition which the defendants found to be too broad. In addition, the defendants accepted three Cook categories as adequately describing trade secrets: "the content of or strategy relating to pending patent application or drafts of patent applications"; "financial information that is not otherwise publicly available"; and "information relating to unreleased upstream products or products in development".

■ Accepted definitions of trade secrets include elements not addressed by these proposals. The Uniform Trade Secrets Act defines a trade secret as:

... information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

(ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Uniform Trade Secrets Act § 1(4), 14 U.L.A. 437, 438 (Master Edition 1990). The Restatement offers a simpler definition:

A trade secret is any information that can be used in the operation of a business or other enterprise and that is sufficiently

1. *See Grove Fresh Distributors, Inc. v. Everfresh Juice Co.,* 24 F.3d 893, 898 (7th Cir.1994) ("Although the media's right of access does not extend to information gathered through discovery that is not part of the public record, the press does have standing to challenge a protective order for abuse or impropriety."). *Contra, Cumberland Packing,* 184 F.R.D. at 505 ("Documents that play no role in the performance of Article III functions, such as materials exchanged during discovery, are given no presumption of access.").

valuable and secret to afford an actual or potential economic advantage over others. *Restatement (Third) of Unfair Competition* § 39 (1995). *See also Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1001, 104 S.Ct. 2862, 2872, 81 L.Ed.2d 815 (1984) (using previous *Restatement of Torts* § 757 cmt. b definition of trade secrets as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it").[2] Both definitions include the requirement that, to qualify as a trade secret, the information must be economically and competitively valuable and that value must derive from the secrecy of the information. The uniform act explicitly adds the elements that the holder of the trade secret must show reasonable efforts to maintain the information's secrecy. The Restatement emphasizes that the value of the information to the holder must constitute a positive economic advantage; prevention of embarrassment and injury to reputation or public image is insufficient to overcome the presumption of access to information. *See Republic of the Philippines v. Westinghouse Electric Corp.,* 949 F.2d 653, 663 (3rd Cir.1991); *Joint Stock Society v. UDV North America, Inc.,* 104 F.Supp.2d 390, 403, 404–05 (D.Del.2000). Proponents of protective orders must make particularized showings of the competitive harm likely to result from the disclosure of protected information. *Republic of the Philippines,* 949 F.2d at 663.

■ The general definition of a trade secret in Cook's category (b)—"trade secrets, know-how or proprietary data, business, financial or commercial information, the disclosure of which is likely to cause harm to the competitive position of the Designating Party"—accurately captures the fact that trade secrets can include a variety of information (although "proprietary data" is too vague), whether business, financial, or commercial. But Cook's definition includes only one active element: that disclosure of the information

will likely cause competitive harm. It fails to include any requirement that the competitive value of the information arise from the secrecy of the information or that the Designating Party have exerted reasonable efforts to maintain that secrecy. Cook's categories (a) and (e)—content and strategy of pending patent applications and unreleased or in-development products—most likely qualify as trade secrets under the accepted definitions, as long as it can be shown the holder has exerted reasonable efforts to keep the information secret.

■ Cook's category (c)—non-public filings with, materials maintained for inspection by, or proceedings before domestic or foreign food and drug agencies—fails to include the necessary elements of competitive value, secrecy, secrecy efforts, and economic advantage. "Non-public" is too vague. If it means only that the information is not available to the general public, then it is insufficient because the information must be kept secret from and not be readily ascertainable by potential competitors. Moreover, the confidential information must give the holder an economic *advantage* and threaten a *competitive* injury—business information whose release harms the holder only because the information is embarrassing or reveals weaknesses does not qualify for trade secret protection.

At this point, the parties may take two paths. They may either submit a proper definition of trade secrets (and any other legitimate category of protectable information) so that the Court can be confident that the parties will make good faith and accurate designations of specific information or they may list discrete categories of documents by subject matter—*e.g.,* pending patent applications or unreleased new products—with an argument or showing that the category qualifies as protectable information and that specific competitive harm is threatened. *See Cumberland Packing,* 184 F.R.D. at 506 ("Needless to say, a party is more likely to

---

**2.** These definitions encompass business information that might be broader than traditional notions of trade secrets. *See Republic of Philippines v. Westinghouse Electric Corp.,* 949 F.2d 653, 662–63 (3rd Cir.1991) (holding that non-

trade secret business information may be protected from public disclosure but requiring a showing that disclosure of the information will harm a business' competitive standing).

be able to establish such good cause if it presents to the court a discrete category of documents and explains why *those* documents should be sealed.")

The Court finds and concludes that trade secrets may be restricted to outside or trial counsel's eyes only. *See Multi-Core, Inc. v. Southern Water Treatment Co.*, 139 F.R.D. 262, 264 (D.Mass.1991); *American Standard, Inc. v. Pfizer, Inc.*, No. 87-1-73-IP, 1988 WL 156152, *3-4 (S.D.Ind., July 8, 1988) (sales information and patent royalty rate information restricted to trial counsel). The defendants' demand that its inside counsel, experts, or administrators be permitted to examine Cook's trade secrets is rejected. The Court understands that Cook desires trial-counsel-eyes protection only for its trade secrets.

█ Cook's category (f)—information that is protected from disclosure by statute, rule, or judicial or administrative order—is broader than trade secrets but is too vague to allow the Court to determine whether it describes a legitimate category of protectable information or that the parties will make accurate and good faith designations thereunder. The validity of this category and any designations thereunder depends upon the content of the subject statutes and rules, and on the scope of any applicable judicial or administrative orders. The parties should identify the specific statutes, rules, court orders, and administrative orders on which they rely, together with a description of the criteria of applicability for each.

█ Cook's category (f)—financial information that is not otherwise publicly available—is too broad. While some financial information might qualify as trade secrets under accepted definitions, some or most financial information will not, and, as noted above, more must be shown to qualify for trade secret protection. As noted above, even for financial information that can constitute trade secrets, more must be shown to qualify for that protection than that the information is "not otherwise publicly available". If the parties seek non-trade secret protection for any financial information, they must present reasons for protection and criteria for designation other than simply that

the information is not otherwise publicly available. They must describe a category or categories of information and show that substantial privacy interests outweigh the presumption of public access to discovery material.

The parties' cross motions for protective orders are denied on the grounds set forth above. The parties shall confer and attempt to agree on a conforming protective order. If parties do not agree, then the parties may submit amended proposed protective orders that conform to the discussion and rulings in this Entry and Order